UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EVELYN WRIGHT,

    Plaintiff,                                         Hon. Gordon J. Quist

v.                                                     Case No. 1:08-CV-553

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 63 years of age at the time of the ALJ's decision.  (Tr. 50, 202).  She successfully completed high school and one year of college and worked previously as an assembler and accounting clerk for General Motors.  (Tr. 62, 67).

Plaintiff applied for benefits on October 29, 2001, alleging that she had been disabled since September 7, 1979, due to multiple chemical sensitivities and chronic fatigue syndrome.  (Tr. 50-52, 61).  Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 40-49).  Following a hearing, ALJ Bonny Barezky issued a written decision that Plaintiff was not disabled, as she did not suffer from a severe impairment.  (Tr. 23-26).  On October 27, 2004, Plaintiff initiated an action in this Court pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

On June 27, 2005, the Honorable Joseph G. Scoville recommended that Plaintiff's claim be remanded for further factual findings, as substantial evidence did not support the ALJ's determination that Plaintiff did not suffer from a severe impairment.  (Tr. 204-09).  The Honorable Robert Holmes Bell adopted this recommendation.  (Tr. 203).  The Commissioner's decision was reversed and the matter was remanded "for further administrative fact finding and completion of the sequential analysis."  (Tr. 203).

On May 31, 2006, Plaintiff appeared before ALJ William Decker, with testimony being offered by Plaintiff and vocational expert, Randall Nelson. (Tr. 555-97). In a written decision dated June 27, 2006, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 195-202). Plaintiff subsequently initiated another appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on June 30, 1985. (Tr. 195); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **RELEVANT MEDICAL HISTORY**

In the summer of 1978, Plaintiff was examined by Dr. Cory Cookingham. (Tr. 83). Plaintiff reported that she was experiencing "prutitus and a facial rash," as well as "nasal stuffiness and itching of the nose." (Tr. 83). Plaintiff participated in a series of "skin tests," the results of which indicated "significant positive reactions" to house dust, pollen, and mold. (Tr. 83).

On August 6, 1979, Dr. Cookingham reported that Plaintiff was "exquisitely sensitive to dust. . .such as paper dust or file cabinet dust." (Tr. 82). The doctor recommended that "it would be wise to remove [Plaintiff] from her job situation which requires her working in the files." (Tr. 82). Plaintiff was later diagnosed as also being allergic to tobacco smoke. (Tr. 81). Plaintiff subsequently began participating in "allergy desensitization therapy." (Tr. 81-82).

On November 6, 1979, Plaintiff was examined by Dr. Shawky Hassan, with the Allergy & Asthma Center. (Tr. 132). The doctor administered a series of "scratch and intradermal"

tests using antigens from trees, grasses, weeds, house dust, tobacco, seasonal mold, and perennial mold. (Tr. 132). The results of these tests failed to indicate a "significantly positive" result. (Tr. 132). Dr. Hassan concluded that Plaintiff was "able to go to work." (Tr. 132).

On December 11, 1979, Dr. Cookingham reported that Plaintiff was continuing her treatment, but "has a flare of symptoms when she is exposed to dust or cigarette smoke." (Tr. 80).

On May 22, 1982, Dr. Cookingham reported that Plaintiff was "extremely sensitive to dust, fumes, and tobacco smoke." (Tr. 115). The doctor reported that Plaintiff was continuing to participate in allergy desensitization therapy. (Tr. 115). Dr. Cookingham concluded that while Plaintiff was unable to perform her "regular occupation," she was capable of working in a "controlled environment" in which she could avoid exposure to dust, smoke, and fumes. (Tr. 115).

On November 29, 1982, Plaintiff was examined by Dr. Harold Ochsner. (Tr. 120). A physical examination "showed no abnormalities in any area except moderate allergic rhinitis and mild exogenous obesity." (Tr. 120). Plaintiff reported that she "now has good enough symptom control that she is ready to return to employment," provided the environment is "clean and free of both dust and most odors such as perfumes and tobacco." (Tr. 120).

On December 30, 1983, Plaintiff was examined by Dr. Joseph Tan. (Tr. 117-18). The results of an examination were unremarkable. (Tr. 117-18). Plaintiff reported that she was experiencing "great symptom control" and was "ready" to resume working "in a place where [the] environment could be clean and free of both dust and mold and [odors] such as tobacco and perfume." (Tr. 117-18).

On June 13, 1984, Dr. Gerald Zaid reported that Plaintiff was "extremely sensitive to dust, fumes, and tobacco smoke" and was continuing to participate in allergy desensitization

5

therapy. (Tr. 116). Dr. Cookingham reported that while Plaintiff was unable to perform her "regular occupation," she was capable of working in a "controlled environment" in which she could avoid exposure to dust, smoke, and fumes. (Tr. 116).

On February 20, 1985, Dr. Kenneth Lauk reported that while Plaintiff was unable to perform her "regular occupation," she "can work in [a] controlled environment." (Tr. 550).

Treatment notes dated December 8, 1986, indicate that Plaintiff "still has a problem with allergies." (Tr. 262). The doctor reported that while Plaintiff cannot perform her "regular occupation" she can perform other employment. (Tr. 262). Treatment notes dated December 15, 1986, reveal that Plaintiff "is exquisitely sensitive to dust especially file dust," but "can work in a dust free environment." (Tr. 263).

Treatment notes dates December 19, 1987, reveal that Plaintiff is allergic to "various molds" and is "undergoing desensitizing treatments." (Tr. 268). The doctor further noted that Plaintiff "can perform any work duty as long as [she] is in a mold-dust free environment." (Tr. 268).

Treatment notes dated November 11, 1997, indicate that Plaintiff suffers from chronic allergies to "environmental dust" and pollen. (Tr. 269). Plaintiff's doctor reported that while Plaintiff was unable to perform her "regular occupation," she was able to perform other employment. (Tr. 269).

On January 11, 1999, Plaintiff was examined by Dr. Gary Martzke. (Tr. 275). Plaintiff reported that she was disabled due to "allergic reaction to dust [and] molds." (Tr. 275). The results of the examination revealed "mild nasal mucosa [and] edema." (Tr. 275). Dr. Martzke concluded that he was "unable to confirm a disabling condition." (Tr. 275).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that as of the date her insured status expired, Plaintiff suffered from multiple chemical sensitivities, a severe impairment that did not satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 198-99). The ALJ concluded that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

limitations. (Tr. 199-201). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date her insured status expired, Plaintiff retained the capacity "to perform work activity in a controlled environment that allows for avoidance of handling files, dust, and cigarette smoke." (Tr. 199). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that

a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Randall Nelson.

The vocational expert testified that there existed approximately 7,300 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 562, 586-92). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

a. The ALJ Properly Evaluated Plaintiff's Credibility

At the administrative hearing, Plaintiff testified that when she worked on the assembly line she began suffering from a rash and breathing difficulties. (Tr. 569-70). She was subsequently transferred to an accounting clerk position. (Tr. 570). Plaintiff testified that her

9

symptoms continued despite this change in work environments. (Tr. 570-71). Plaintiff reported that this caused her to become "very, very depressed." (Tr. 571). Plaintiff testified that her impairments caused her to stop working in 1979. (Tr. 572). However, discontinuing work did not alleviate her symptoms. (Tr. 572-73). Plaintiff reported that she continued to experience severe allergic symptoms from anything that was not "unscented." (Tr. 572-73). Plaintiff testified that because she was "allergic to everything" she was unable to work. (Tr. 573-75). The ALJ discounted Plaintiff's subjective allegations, finding that Plaintiff's testimony "concerning the intensity, duration and limiting effects of [her] symptoms are not entirely credible." (Tr. 199). Plaintiff asserts that the ALJ failed to give proper weight to her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

10

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

As described above, the medical evidence contradicts Plaintiff's testimony that her condition impaired her to the extent alleged. While Plaintiff's care providers recognized that Plaintiff was allergic to dust and smoke, they consistently reported that Plaintiff was capable of working in an environment free of such irritants. The record further reveals that Plaintiff responded favorably to allergy desensitization therapy. The Court finds, therefore, that there exists substantial evidence to support the ALJ's credibility determination.

b.  The ALJ Properly Evaluated Plaintiff's Mental Impairment

As previously noted, the ALJ found that as of the date Plaintiff's insured status expired she suffered from a single severe impairment, multiple chemical sensitivities. Plaintiff asserts that the ALJ erred by failing to find that she also suffered from a severe psychiatric impairment.

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); *see also*, *Despins v. Commissioner of Social Security*, 257 Fed. Appx. 923, 929 n.2 (6th Cir., Dec. 14, 2007).

An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988)); *see also*, *Williamson v. Secretary of Health and Human Services*, 796 F.2d 146, 151 (6th Cir. 1986) (an impairment is less than severe only if it is a "slight

abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience").

The record contains no evidence that Plaintiff, prior to the expiration of her insured status, suffered a psychological impairment that significantly limited her ability to perform basic work activities. The record does contain evidence that Plaintiff subsequently began experiencing severe psychiatric symptoms. (Tr. 141-49, 333-67). As the ALJ recognized, however, Plaintiff did not begin seeking treatment for such until 1999, more than thirteen years after the expiration of her insured status. Moreover, there is no evidence that the impairments for which Plaintiff later received treatment manifested themselves or impaired Plaintiff prior to the expiration of her insured status. The Court finds, therefore, that the ALJ's determination on this issue is supported by substantial evidence. However, even if the ALJ's conclusion is not sufficiently supported by the evidence, the result is the same.

At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir., Feb. 22, 2008) (citing *Maziarz*, 837 F.2d at 244); *Fisk v. Astrue*, 253 Fed. Appx. 580, 583-84 (6th Cir., Nov. 9, 2007) (same).

Here, the ALJ determined that Plaintiff suffered from a severe impairment at step two of the sequential analysis and continued with the remaining steps thereof, considering in detail the

13

medical evidence of record. Thus, even if the Court assumes that the ALJ erred in failing to find that Plaintiff suffered from a severe psychological impairment prior to the expiration of her insured status, such does not call into question the substantiality of the evidence supporting the ALJ's decision. *See Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

c. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 7,300 such jobs. Because

there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  January 7, 2009                             /s/ Ellen S. Carmody
                                                 ELLEN S. CARMODY
                                                 United States Magistrate Judge